1
2
3
4
5

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| Jennifer Marie Jones, | No. CV-13-02170-PHX-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| Town of Quartzsite, et al., | |
| Defendants. | |

Plaintiff *pro se*, Jennifer Marie Jones,[1] is a resident of the Town of Quartzsite (the "Town"), one of the defendants herein. This is one of several federal lawsuits Plaintiff has filed against the Town and various of its employees in recent years.[2] In this latest dispute, Plaintiff is suing the Town and various Town employees regarding enforcement of the Town's Zoning Code and Ordinances. For almost a decade, without incident, Plaintiff ran a pet grooming and pet sitting business out of a variety of recreational vehicles in the Town. In the fall of 2010, Plaintiff became politically active, announcing that she would be running for Town Council and would be starting her own independent

---

[1]     Plaintiff was previously represented by counsel. In fact, her prior counsel drafted the complaint which is the subject of this motion. On May 13, 2014, shortly after the filing of Defendants' motion, the Honorable Neil V. Wake, to whom this case was previously assigned, discharged Plaintiff's counsel from representing her in this case because of his failure to "respond to repeated orders of the Court[.]" Ord. (Doc. 19) at 1:24. Plaintiff thus began representing herself.

[2]     *See Jones v. Quartzsite*, 2014 WL 4771851 (D.Ariz. Sept. 24, 2014) ("*Jones I*"); *Jones v. Quartzsite*, 2:12-cv-2629- LOA; and *Jones v. Quartzsite*, 2:13-cv-01770-DJH.

newspaper. Plaintiff claims that thereafter various Town officials began harassing her. In this action, the alleged harassment took the form of Plaintiff being charged with three misdemeanors for Town Zoning Ordinance and Code violations (the "zoning code complaint") relating to her business. All charges were later dismissed.

Pending before the Court is a Motion for Judgment on the Pleadings pursuant to Fed.R.Civ.P. 12(c) filed by Defendants, the Town of Quartzsite (the "Town"), Laura Bruno, Stephen Henrichs, Mark Orgeron, and Patricia Anderson.[3] Plaintiff Jones has filed a Response (Doc. 25) and Defendants have filed a Reply (Doc. 27).

## I. Background[4]

Plaintiff resides in the Town of Quartzsite where, for almost a decade, she has been running a pet grooming and pet sitting business out of a variety of recreational vehicles. Co. (Doc. 1) at 9, ¶ 16. In late winter 2011 or early spring 2012, Plaintiff entered into a verbal agreement with Desert Gardens, owned by Charles Richard Oldham, for renovation of a travel trailer to be used as a grooming shop for that business. (*Id.* at 9, ¶ 17). Upon completion of the renovation, Plaintiff was going to occupy a permanent space at the "Main St. Swap Meet, also owned by Oldham." (*Id.*) Plaintiff paid

---

[3] The Honorable Neil V. Wake, to whom this case was previously assigned, dismissed the complaint as against defendants Crooks, Jewitt, Kelley and Ward for failure to serve these defendants and file proof of service with the Court. *See* Ord. (Docs. 13 and 14).

[4] Ostensibly the complaint names the spouses of the individuals as defendants as well. The caption refers, depending, to the "Wife" or "Husband" of each individual defendant. Nowhere in the complaint are the spouses ever identified, however. More importantly, there is no indication that any of the spouses have been served. Consequently, the court lacks personal jurisdiction over the spouses and thus *sua sponte* dismisses them from this action. *See Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987) ("Before a . . . court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied."); *Mississippi Publishing Corp. v. Murphree*, 326 U.S. 438, 444–445 (1946) ("[S]ervice of summons is the procedure by which a court . . . asserts jurisdiction over the person of the party served.").

[4] The Court, as it must in considering this Rule 12(c) dismissal motion, is accepting the facts as pled by Plaintiff, the non-movant. *See United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1053 (9th Cir. 2011) (citations omitted). The facts set forth herein "have not been judicially determined, but are rather what [the Court] think[s] to be a fair summary of the complaint's allegations." *See id.* (footnote omitted).

"substantial 'good faith' money to cover the costs of supplies and labor[]" for that renovation. (*Id.*)

On April 6, 2012, Desert Gardens moved the trailer to the Swap Meet to complete the renovation. Co. (Doc. 1) at 11, ¶ 23. Defendant Henrichs, the Town's Acting Community Development Director, then served a "'stop work order'" on Desert Gardens' owner, Mr. Oldham. (*Id.* at 9, ¶ 18). Oldham stopped working on the trailer renovations and filed a written dispute with the Town, which went unanswered. (*Id.*) In the meantime, the trailer registration was transferred to Plaintiff, although Desert Gardens had a lien on it. (*Id.* at 10, ¶ 19). Although Plaintiff and Oldham agreed to "renegotiate the selling price" of the trailer, as the renovation had not been completed, no purchase agreement was ever signed. (*Id.*)

On October 24, 2012,[5] defendant Henrichs "showed up" at Plaintiff's "shop . . . with what looked to be court papers in his hand." Co. (Doc. 1) at 10, ¶ 20). Defendant Henrichs told Plaintiff that she "was served, and that if she didn't show up to court, a warrant would be issued for her arrest, and she would go to jail." (*Id.*) That same day, Plaintiff spoke with the Town Mayor about the matter, who in turn spoke with defendant Bruno. (*Id.*); *see also* Mot., exh. 2 (Doc. 17-1) at 7.[6] The Mayor "expressed his concern about the Oldham/Jones [zoning] citations[]" to defendant Bruno, and "asked [her] to look into the matter." (*Id.*) Defendant Bruno did that and was "assured that the cited violations [we]re appropriate." (*Id.*)

Several days later, on October 29, 2012, defendant Bruno, Interim Town Manager,

---

[5] The complaint does not include a year, but given the context, presumably this occurred in 2012.

[6] Because the complaint references this memorandum, Defendants have provided a copy as an exhibit to their motion. For that same reason, they have also provided a copy of the criminal complaint, which is the crux of this lawsuit. In addition to the non-conclusory allegations in the complaint, the Court will consider this memorandum and the underlying complaint because the complaint herein references both and their authenticity is not at issue. *See Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (citations omitted) (court may "consider a writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned[]").

wrote a memo to the members of the Town's Common Council pertaining to "Code Compliance Matters[.]"  Co. (Doc. 1) at 10, ¶ 21; Mot., exh. 2 (Doc. 17-1) at 6-7.  That memorandum "provide[d] an update on the status of various violations within Town limits which Code Compliance Services ha[d] been working to address."  Mot., exh. 2 (Doc. 17-1) at 6.  Among the listed properties, was 1695 West Main Street, with Mr. Oldham named as "property owner of record[,]" and Plaintiff named as "tenant[.]"  (*Id.*) at 7.

On November 7, 2012,[7]  Plaintiff was arraigned in the Quartzsite Municipal Court. Plaintiff was charged with three Class 1 misdemeanors. Co. (Doc. 1) at 11, ¶ 23.  "From on or about April 6, 2012 to October 23, 2012 (each day constituting a separate offence pursuant to [the Town's Zoning Ordinance])," Plaintiff was charged with "install[ing] a park model trailer in a . . . zone which has a conditional use permit for a Park and Swap Lot," in violation of the Town's Zoning Code and Ordinances (the "Zoning Code"). Defs.' Mot., exh. 3 (Doc. 17-1) at 9.  Additionally, for that same period of time, and with each day also constituting a separate offense, Plaintiff was charged with "operat[ing] as a park and swap meet participant or vendor" without first obtaining the necessary permit[s]. (*Id.* at 10).  Lastly, and again for that same period of time, and with each day also constituting a separate offense, Plaintiff was charged with installing or allowing to be installed a prohibited sign, violations of the Town's Zoning Code.  (*Id.*)  According to Plaintiff, this complaint, among other actions, was brought "to prevent [her] from plying her dog grooming and pet sitting business." Co. (Doc. 1) at 9, ¶ 16.

The Town Prosecutor, a former Defendant, dismissed all charges on the Town's own motion "'in the interest of justice[.]'" Co. (Doc. 1) at 12, ¶ 23.  In the meantime, during the first week of November, 2012, Plaintiff relocated her business, "forfeiting the 'good faith' money given to Oldham because she was unable to use the trailer on

---

[7]     The complaint alleges "November 7th 2013[.]" Co. (Doc. 1) at 11, ¶ 22. Presumably that is a typographical error, however, as the preceding and succeeding events occurred in October 2012 and in November 2012. *See id.* at 10 - 13, ¶¶ 19-21 and 23-24.

Oldham's property[]" given the pendency of the zoning code complaint. (*Id.* at 12, ¶ 24). Plaintiff incurred additional renovation expenses for replacing "the entire bathtub[]" in her old recreational vehicle, "which she had planned on sending to a junk yard." (*Id.*) Due to the unanticipated relocation and repairs to her old RV, Plaintiff lost approximately two weeks of work from her dog grooming and pet sitting business. (*Id.*)

On October 24, 2013, Plaintiff filed this 42 U.S.C. § 1983 action alleging eight causes of action or counts. Plaintiff is alleging violations of several of her constitutional rights and a conspiracy to violate those rights against all Defendants. Plaintiff alleges against the Town only for failure to train, supervise and discipline Defendants. In addition, Plaintiff alleges intentional infliction of emotional distress ("IIED") and intentional interference with contract ("IIC") against all Defendants. Defendants are seeking judgment on the pleadings as to all eight counts of the complaint.

## II. Rule 12(c) Motion for Judgment on the Pleadings

The Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), set forth the standard for deciding motions brought pursuant to Rule 12(b)(6). The Ninth Circuit applies the framework of *Iqbal* and its progeny to Rule 12(c) motions because they are "functionally identical to Rule 12(b)(6)" motions. *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n. 4 (9th Cir. 2011) (citations omitted). A complaint must contain a "short and plain statement showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). "All that is required are sufficient allegations to put defendants fairly on notice of the claims against them." *McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991). Rule 8, however, requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S., at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

A complaint need not contain detailed factual allegations to avoid a Rule 12(b)(6) dismissal; it simply must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S., at 570. "A complaint has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct., at 1949 (citing *Twombly*, 550 U.S., at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Iqbal*, 129 S.Ct., at 1949 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (citation omitted).

"The Court may find a claim plausible when a plaintiff pleads sufficient facts to allow the Court to draw a reasonable inference of misconduct, but the Court is not required 'to accept as true a legal conclusion couched as a factual allegation.'" *Harris v. County of Orange*, 682 F.3d 1126, 1131 (9th Cir. 2012) (quoting *Iqbal*, 556 U.S., at 678, 129 S.Ct. 1937 (internal quotation marks and citation omitted)). Likewise, a complaint that provides "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S., at 555. Nor will a complaint suffice if it presents nothing more than "naked assertions" without "further factual enhancement." *Id.* at 557. "Determining whether a complaint states a plausible claim for relief will, . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S., at 679 (citation omitted).

### III.  42 U.S.C. § 1983 Claims

Section 1983 allows individuals to recover damages and other relief for deprivations of constitutional rights that occur under color of state law. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 330-31 (1986). Vicarious liability is inapplicable to section 1983 actions. *Iqbal*, 556 U.S. at 663 (2009) (citing *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 691 (1978)). Consequently, "the plaintiff in a suit such as the present one must plead that each Government-official defendant, through his [or her] own individual actions, has violated the Constitution." *Id.*  The elements required to establish a civil rights claim under 42 U.S.C. § 1983 are: "(1) a violation of rights protected by the Constitution or created by federal statute, (2) proximately caused (3) by conduct of a

'person' (4) acting under color of state law." *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled[,]" however. *Johnson v. Brady,* 2015 WL 390794, at * 2 (D.Ariz. Jan. 28, 2015) (citing *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9ᵗʰ Cir. 1982)).

To state a valid constitutional claim, a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an affirmative link between the injury and the conduct of that defendant. *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976); *see also Monell*, 436 U.S. at 692 (footnote and citation omitted) ("Congress did not intend § 1983 liability to attach where . . . causation [is] absent."); *Trice v. Modesto City Police Dept.*, 2009 WL 102712, at *8 (E.D. Cal. Jan. 14, 2009) ("In order to state a claim for relief under section 1983, plaintiff must link each named defendant with some affirmative act or omission that demonstrates a violation of plaintiff's federal rights."). "'A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" *Lacey v. Maricopa County*, 693 F.3d 896, 917 (9ᵗʰ Cir. 2012) (quoting *Johnson v. Duffy*, 588 F.3d 740, 743 (9ᵗʰ Cir. 1978) (citation omitted)).

## A. Statute of Limitations

Originally, in moving for judgment on the pleadings, Defendants limited their statute of limitations argument to Plaintiff's malicious prosecution claim. In their reply, however, Defendants expanded that argument, asserting that "the *entirety* of this action is barred by the statute of limitation [sic]." Reply (Doc. 27) at 6:3 (emphasis added). The Court will not consider this argument, raised for the first time in Defendants' reply. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9ᵗʰ Cir. 2007) (citing *Koerner v. Grigas*, 328 F.3d 1039, 1048 (9ᵗʰ Cir. 2003)) ("The district court need not consider arguments raised for the

first time in a reply brief.")[8]   Hence, because Defendants' argument that the entire complaint should be dismissed on statute of limitations grounds is not properly before the Court, it will proceed to address the merits.

## B. Individual Defendants

The individual defendants, Anderson, Bruno, Henrichs and Orgeron, are all Town employees, yet they are being sued only in their individual, not official, capacities.   Due to a lack of sufficient factual allegations, Defendants argue that the complaint fails to state a claim against any of these defendants.   Supposedly responding to this argument,[9] Plaintiff asserts that she "has alleged sufficient facts to conclude that all named Defendants knew or reasonably should have known [of] the facts giving rise to the Complaint[.]"   Resp. (Doc. 25) at 3:19-22.   Plaintiff did not elaborate by, for example, pointing to where in the complaint such factual allegations can be found.   In any event, after carefully scrutinizing the complaint, and keeping firmly in mind the *Iqbal*/*Twombly* pleading standards, the Court finds that Plaintiff has failed to state a section 1983 claim against the four individual defendants.

. . . .

---

[8]   The Court is compelled to comment upon Defendants' misconception that A.R.S. § 12-821.01(A) somehow applies to Plaintiff's section 1983 claims.   It does not. That statute requires persons having claims against a public entity or employee to file such claims in accordance therewith within 180 days after the cause of action accrues. A.R.S. § 12-821.01(A).   Otherwise, "no action may be maintained thereon."   *Id.*   It has been the law for more than two decades, however, that "[a] civil rights plaintiff cannot be required by state law to give a prospective defendant 'notice' of an intention to sue because § 1983, which exists to vindicate important federally created rights, preempts state notice-of-claim statutes."   *Ellis v. City of San Diego, Cal.*, 176 F.3d 1183, 1191 (9th Cir. 1999) (citing *Felder v. Casey*, 487 U.S. 131, 153 (1988)).   The Ninth Circuit could not have been more clear in *Ellis*:   "All state notice of claim statutes are preempted, whether contained in MICRA [California's Medical Injury Compensation Reform Act] or elsewhere."   *Ellis*, 176 F.3d at 1191 (citation and footnote omitted); *see also Mulleneaux v. State*, 190 Ariz. 535, 540 (App. 1997) (court improperly dismissed section 1983 claim against individual defendants for failing to comply with A.R.S. § 12-821 based on Felder which "indicates that Arizona's filing requirement is preempted as inconsistent with federal law[]").

[9]   One of Plaintiff's counter arguments is that she "has stated a claim against individual defendants[.]"   Resp. (Doc. 25) at 3:13 (emphasis omitted).   Despite that heading, the following paragraph addresses only qualified immunity, and thus is non-responsive.   *See* Resp. (Doc. 25) at 3:13-26.

- 8 -

### 1. Defendants Anderson and Orgeron

Defendants Anderson and Orgeron were members of the Town Council and Town employees during the relevant time frame. Co. (Doc. 1) at 7-8, ¶ 13; 4-5, ¶ 9. Defendant Orgeron also held the position of the Town's Community Development Director during the relevant time frame. (*Id.* at 4-5, ¶ 9). In the paragraphs identifying these two defendants, Plaintiff uniformly alleges that each of them "participated in, or directed, the filing of 603 counts of false code violation charges against [her], all of which were later dismissed." (*Id.* at 7-8, ¶ 13; 4-5, ¶ 9). These paragraphs precede the section entitled "Complaint . . . Factual Allegations." (*See id.* at 8:21-22) (emphasis omitted). Tellingly, the complaint does not mention defendant Orgeron in the factual allegation portion thereof. These conclusory allegations that defendants Anderson and Orgeron "participated in, or directed, the filing of" the zoning code complaint fall woefully short of alleging that either of them violated Plaintiff's constitutional rights.

The "factual allegations" do reference defendant Anderson in passing. Evidently Plaintiff is quoting from a January 3, 2012, letter from the then County Attorney for La Paz County to the Federal Bureau of Investigation[10] pertaining to an investigation into the Town's Police Department and its former Chief, Jeff Gilbert. *See* Co. (Doc. 1) at 17-18, ¶ 42. That letter indicates that defendant Anderson "publicly criticized" the La Paz County Attorney's "office for declining to prosecute" an individual – not Plaintiff -- "for an incident that took place at a Town Council meeting in June 2011[.]" (*Id.* at 18, ¶ 42). Assuming the truth of this snippet, it comes nowhere near the factual enhancement to state a section 1983 claim against defendant Anderson.

In her response, Plaintiff states that defendants Orgeron and Anderson failed "to act to mitigate damaged [sic] after being formally notified of the situation[.]" Resp. (Doc. 25) at 7:3-5. The complaint does not include a similar allegation, however. Even if it did, this bald assertion, without any alleged factual context, also would not suffice to state a section 1983 claim against defendants Anderson or Orgeron.

---

[10] The complaint indicates that this letter is available online and provides a website. It is not.

At best, Plaintiff's allegations against defendants Anderson and Orgeron amount to a mere recitation of the elements of a section 1983 cause of action. That will not suffice under *Twombly*, 550 U.S. at 555. Running directly afoul of *Twombly's* pleading requirements, the complaint's allegations as to these defendants are nothing more than "naked assertions" without "further factual enhancement." *See id.* at 557. Thus, "without some specific 'factual content' that might allow the Court to "draw the reasonable inference" that [these defendants] may be held personally liable for any unconstitutional conduct directed at Plaintiff, the Court finds h[er] Complaint, as currently pleaded, contains only the type of 'defendant-unlawfully-harmed-me accusations,' which *Iqbal* makes clear, fail to 'state a claim to relief that is plausible on its face.'" *See Turner v. San Diego County*, 2015 WL 1197813, at *5 (S.D.Cal. March 16, 2015) (quoting *Iqbal*, 556 U.S. at 568). What is more, as is readily apparent, Plaintiff has failed, as she must to, "link" defendants Anderson or Orgeron to "some affirmative act or omission that demonstrates a violation of [her] federal rights." *See Trice,* 2009 WL 10712, at *8. The Court, therefore, grants the motion for judgment on the pleadings as to defendants Anderson and Orgeron with respect to count 1-3, 6 and 8.

## 2. Defendants Bruno and Henrichs

The complaint contains a few more scant allegations as to defendants Bruno and Henrichs, but ultimately not enough to defeat their motion. As to the former, the complaint identifies defendant Bruno by name in only two paragraphs. As previously alluded to, the complaint vaguely alleges that Ms. Bruno "participated in, or directed" the filing of the zoning code complaint. Co. (Doc. 1) at 2, ¶ 6. The second paragraph pertains to the October 29, 2012, memorandum authored by defendant Bruno. That memorandum listed, *inter alia,* properties, complaints, actions taken or not by the owners, and, if necessary, anticipated action by Code Compliance Services. *See* Mot., exh. 2 (Doc. 17-1) at 6-7. Property located at 1695 West Main Street was also listed in the memorandum, with Mr. Oldham as "property owner of record[,]" and Plaintiff as "tenant[.]" (*Id.*) at 7. Defendant Bruno added Mr. Oldham and Plaintiff to that list. Co.

(Doc. 1) at 10-11, ¶ 21. The memo indicated that both had received "legal citation[s]." Mot., exh. 2 (Doc. 17-1) at 7.

Defendant Bruno concluded her memorandum:

> Here is my concern: Ordinances and regulations must apply equally to all areas, occupants and visitors of the Town to avoid "selective enforcement" and other selective deprivation issues. The Town Manager and its employees must be expected to fairly and evenly apply and carry out the rules of our Town.
>
> However, if any Member of the Common Council wishes to selectively waive enforcement of the Town's rules, the matter must be heard in a public session of the Common Council and be voted on. And, if the matter is approved by a majority of the Council, direction would then be given to the Town Manager to proceed with selective enforcement of those rules.

Mot., exh. 2 (Doc. 17-1) at 7. Even when taken together, the complaint lacks sufficient factual content from which a reasonable inference can be drawn that defendant Bruno is liable for violating Plaintiff's constitutional rights. This is all the more so given the absence of allegations regarding causation.

The complaint does contain a few more allegations as to defendant Henrichs, but in the end, it is similarly defective. In addition to the vague allegation that he "participated in, or directed, the filing of" the zoning code complaint, as the Town's "Acting Community Development Director[,]" he "served a 'stop work order' on" Desert Gardens. Co. (Doc. 1) at 9, ¶ 18. That stop work order was precipitated by Desert Gardens' moving the trailer, which it was renovating for plaintiff, to the swap meet to finish the renovation. (*Id.*) The basis for that order was the Town's position "that parking the travel trailer and placing ordinary jack stands under the slide-out required a site plan and set permit, as would be required for installing a manufactured home[.]" (*Id.*)

Mr. Oldham stopped the renovation and filed a written dispute with the Town. Co. (Doc. 1) at 9, ¶ 18. The Town did not respond and defendant "Henrich swore out a blatantly false complaint against Oldham . . . with the Arizona Registrar of Contractors[.]" (*Id.* at 10, ¶ 18). Although Mr. Oldham responded and a hearing was held, the Town did not appear and the case was dismissed. (*Id.*)

Additionally, on October 24, 2012, defendant Henrichs served Plaintiff in connection with the zoning code complaint, as set forth earlier. *See* Co. (Doc. 1) at 10, ¶ 20. Much like defendant Bruno, the complaint lacks sufficient factual content to state a section 1983 claim against defendant Henrich. It likewise lacks sufficient allegation linking service of either the stop work order or the zoning code complaint to a deprivation of Plaintiff's constitutional rights.

Plaintiff's failure to sufficiently allege a section 1983 claim against either defendant Bruno or Henrich becomes even more glaring when viewed in the narrower context of her alleged constitutional deprivations.

### C. First Amendment (Counts 1 & 2)

The complaint includes two separate First Amendment causes of action. In the first, Plaintiff broadly alleges violations of her right to free speech, press and assembly. *See* Co. (Doc. 1) at 32-33, ¶¶ 49-52. In the second, she alleges that that "Defendants' filing of false charges and fines against Plaintiff, in retaliation for her engaging in constitutionally protected speech and political activity, constituted unlawful retaliation[.]" (*Id.* at 34, ¶ 55). Given the "duplicative . . . supporting allegations[,]" Defendants construe the complaint as alleging a single First Amendment retaliation claim "in the form of malicious, or retaliatory, prosecution." Mot. (Doc. 17) at 7:5-6.

Plaintiff devotes the bulk of her response to discussing the retaliation claim, although she does include a few actions ostensibly undertaken by the Town which she claims have "caused a chilling effect[.]" *See*, *e.g.*, Resp. (Doc. 25) 4:23. Significantly, the complaint does not include any of these actions. This omission is understandable as none of the asserted actions, such as introducing a timer "to the 'Call to the Pubic" at Town [C]ouncil meetings" pertain to the filing of the zoning code complaint, which is at the crux of this lawsuit. (*See id.* at 4:24-25).

Plaintiff states that she may be able to produce "[e]vidence and numerous witnesses . . . at trial to support [her] allegation[]" that her "treatment . . . has had a chilling effect as evidenced by[,]" among other things, reduced participation during

- 12 -

public comment at Town meetings[.]"  Resp. (Doc. 25) 4:20-21.  This assertion, in her response only, does nothing to refute Defendants' argument that the complaint alleges a single First Amendment claim based on retaliation, and not a violation of her free speech rights.  This is the only logical reading of Plaintiff's First Amendment claim, given, as Defendants point out, the absence of any allegations even hinting at censorship, prior restraint, or viewpoint discrimination.

"In order to state a claim for retaliatory prosecution under 42 U.S.C. § 1983, a plaintiff must allege 'first that [Defendants] took action that would chill or silence a person of ordinary firmness from future First Amendment activities[.]'"  *Donahoe v. Arpaio*, 869 F.Supp.2d 1020, 1069 (D.Ariz. 2012), *aff'd on other grounds sub nom. Stapley v. Pestalozzi*, 733 F.3d 804 (9th Cir. 2013) (quoting *Dietrich v. John Ascuaga's Nugget*, 548 F.3d 892, 900–01 (9th Cir. 2008) (citing *Skoog v. Cnty. of Clackamas*, 469 F.3d 1221, 1231–32 (9th Cir. 2006)) (internal citations omitted).  However, a plaintiff "need not show h[er] speech was actually inhibited or suppressed."  *Lacey*, 693 F.3d at 916 (internal quotation marks and citation omitted).  Second, a plaintiff must allege "'that [Defendants'] desire to cause the chilling effect was a but-for cause of [Defendants'] action.'"  *Donahoe*, 869 F.Supp.2d at 1069 (quoting *Dietrich*, 548 F.3d at 900–01) (citing *Skoog*, 469 F.3d at 1231–32) (internal citations omitted)).  A plaintiff does this by "alleg[ing] facts ultimately enabling [her] to 'prove the elements of retaliatory animus as the cause of injury,' with causation being 'understood to be but-for causation.'"  *Lacey*, 693 F.3d at 917 (quoting  *Hartman v. Moore*, 547 U.S. 250, 260 (2006); *see id*. ("It may be dishonorable to act with an unconstitutional motive and perhaps in some instances be unlawful, but action colored by some degree of bad motive does not amount to a constitutional tort if that action would have been taken anyway.")).  Further, "'when a plaintiff claims prosecution in retaliation for an exercise of a First Amendment right, the plaintiff must plead and prove that the defendant lacked probable cause.'"  *Donahoe*, 869 F.Supp.2d at 1069 (quoting *Dietrich*, 548 F.3d at 901) (other citation omitted).

Defendants contend that the complaint does not allege any of these elements and

thus Plaintiff's First Amendment retaliation claim is not viable. Plaintiff addresses only the probable cause element, claiming that Defendants were notified of the lack thereof. Plaintiff also argues that the lack of probable cause is a jury issue. In some settings, that is true. At this juncture, however, where Defendants' motion is challenging the legal sufficiency of the complaint, Plaintiff must sufficiently allege lack of probable cause as an element of her First Amendment retaliation claim.

With that clarification, the Court will turn to the sufficiency of the First Amendment retaliation allegations as to defendant Bruno. The only non-conclusory allegations in the complaint as to her, as previously discussed, pertain to Bruno's authoring a memorandum to the Town Council regarding zoning code violations. Accepting that that action is sufficient to "chill or silence a person of ordinary firmness from future First Amendment activities," still, Plaintiff has not adequately pled the requisite but-for causation. Nowhere in the complaint does Plaintiff allege, nor can it be reasonably inferred, that defendant Bruno, in writing that memorandum, desired to cause a chilling effect on Plaintiff's speech.

Turning to defendant Henrichs, again, even if the Court accepts that service of a summons "would chill or silence a person of ordinary firmness from future First Amendment activities[,]" the complaint is void of any allegations that he desired to cause a chilling effect by that action. Put differently, accepting the relatively minimal non-conclusory allegations as to defendant Bruno, the complaint does not sufficiently allege that he acted with the requisite retaliatory animus.

Furthermore, missing from the complaint are any allegations that defendants Bruno or Henrichs knew of Plaintiff's "opposition" to Town "policies[,] . . . of her activities as a journalist and publisher which [we]re critical of the Town and. . . of her running for office against incumbents on the Town council." *See*, *e.g.*, Co. (Doc. 1) at 3, ¶ 6. Of equal if not more import is the absence of any allegations that Defendants' awareness of such activities was the reason for their respective actions. *See Dietrich*, 548 F.3d at 901 (political organization volunteer did not establish First Amendment

retaliation causation on the theory that defendant police cited her for a traffic violation because of a newspaper article about her earlier political activities where there was no evidence defendants read the article or cited her because of it).  Finally, as with defendants Anderson and Orgeron, the complaint alleges that defendants Bruno and Henrichs "participated in, or direct the filing of" the "false" zoning code complaint against Plaintiff.  *See* Co. (Doc. 1) at 3, ¶¶ 6 and 7.  Without any factual enhancement, these vague and conclusory allegations do not comport with the *Iqbal*/*Twombly* pleading standards.

### D.  Fourth Amendment (Count 3)

In her third cause of action, Plaintiff alleges that "Defendants' actions in authorizing and/or directing and requesting the filing of false charges against [her] without probable cause violated [her] Fourth Amendment right to be free from malicious prosecution."  Co. (Doc. 1) at 34, ¶ 57.  Defendants contend that certain "allegations" pertaining to this cause of action are time-barred.  Mot. (Doc. 17) at 8:13-16 (footnote omitted).  On the merits, Defendants further contend that this cause of action is legally insufficient because it is not predicated upon a physical seizure or arrest, an essential element of a Fourth Amendment violation.  Plaintiff does not respond to this argument at all, focusing instead on the motive of various defendants.  *See* Resp. (Doc. 25) at 6-7.  It is tempting to deem Plaintiff's silence to acceding to the validity of defendants' argument, but the Court will not.

#### 1.  Statute of Limitations

Defendants assert that "all *allegations* regarding conduct prior to October 24, 2012, including but not limited to Defendant Henrich's October 20, 2012 service of citations and Plaintiff's 2011 arrests (for which no conduct is alleged of any Defendant) are time barred, as Section 1983 claims have a two-year statute of limitations."  Mot. (Doc. 17) at 8:12-16 (footnote omitted) (emphasis added).  Even if conduct prior to October 24, 2012, is time-barred for purposes of this claim, Plaintiff contends, without explanation, that such unspecified conduct is "very relevant as evidence of the pattern

and practice necessary to establish other elements of this [malicious prosecution] Claim." Resp. (Doc. 25) at 7:14-15.

Assuming an "allegation," as opposed to a claim or cause of action, could be time barred, nonetheless, Defendants' reasoning is flawed. Defendants are correct that "[i]n Arizona, the courts apply a two-year statute of limitations to § 1983 claims." *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9ᵗʰ Cir. 1999) (citing *Marks v. Parra*, 785 F.2d 1419, 1420 (9ᵗʰ Cir. 1986) (citing A.R.S. § 12–542)). This is consistent with settled law that because section 1983 does not include its own statute of limitations, federal courts are to apply the statute of limitations governing personal injury claims in the forum state. *Wilson v. Garcia*, 471 U.S. 261, 280 (1985). Where their reasoning falls apart, however, is in the calculation of the statute of limitations. Plaintiff filed her complaint on October 24, 2013. Therefore, to be timely her Fourth Amendment malicious prosecution claim had to accrue no earlier than October 24, 2011 -- not October 24, 2012, as Defendants indicate. Furthermore, accepting as true the complaint's allegations, defendant Henrichs served Plaintiff on October 24, 2012 – not October 20, 2012, as Defendants erroneously state. Therefore, the actions which form the basis for this lawsuit, the service, filing, prosecution and subsequent dismissal of false zoning code violations -- all of which occurred after October 24, 2011 -- are timely. Obviously, this includes defendant Henrichs' October 24, 2012 service upon Plaintiff. Consequently, there is no merit to Defendants' argument that Plaintiff's Fourth Amendment malicious prosecution claim is time barred.

## 2. Seizure

For a malicious prosecution claim "to be cognizable under § 1983, in addition to showing that the defendants prosecuted him with malice and without probable cause, a plaintiff must demonstrate a Fourth Amendment seizure (or the violation of another such 'explicit textual source of constitutional protection')." *Yousefian v. City of Glendale*, --- F.3d ---, 2015 WL 925594, at *4 (9ᵗʰ Cir. March 5, 2015) (quoting *Albright v. Oliver*, 510 U.S. 266, 271–75 (1994); *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9ᵗʰ Cir.1995)). Plaintiff explicitly frames her malicious prosecution claim in terms of a

Fourth Amendment violation. Despite that, her complaint does not include any allegations of a Fourth Amendment seizure, much less such a seizure by defendants Bruno or Heinrich. For example, there are no allegations that Plaintiff was ever taken into custody, detained, arrested or handcuffed as a result of the zoning code complaint.

Furthermore, Plaintiff's appearance in municipal court after service by defendant Henrichs, is not tantamount to a constitutional seizure. *Cf. Garber v. Flores*, 2009 WL 1649727, at * 8 (C.D.Cal. June 10, 2009) ("A traffic citation, even if it did require that plaintiff appear in court at some future time, does not constitute a seizure under the Fourth Amendment.") (citing *Karam v. City of Burbank*, 352 F.3d 1188, 1194 (9th Cir. 2003); *Button v. Maloney*, 196 F.3d 24, 30 (1st Cir. 1999) (holding that "[a]bsent any evidence [plaintiff] was arrested, detained, restricted in his travel, or otherwise subject to a deprivation of his liberty before the charges against him were dismissed, the fact that he was given a date to appear in court is insufficient to establish a seizure within the meaning of the Fourth Amendment") (cited with approval in *Karam*, 352 F.3d at 1193); *Martinez v. Carr*, 479 F.3d 1292, 1299 (10th Cir. 2007) (finding that "the mere issuance of a citation requiring presence at future legal proceedings does not qualify as a constitutional 'seizure' ")). Another shortcoming in Plaintiff's malicious prosecution claim is her failure to allege any act by either defendant Bruno or Henrichs which could be deemed a prosecution. Certainly an Interim Town Manager's writing of a memorandum to the Town Council does not constitute prosecution. Nor does the service of a summons or complaint, which is an administrative or ministerial, not prosecutorial function. Thus, accepting the allegations in the complaint as true, and drawing all reasonable inferences therefrom, the Court finds that Plaintiff has failed to state a section 1983 claim for malicious prosecution in violation of the Fourth Amendment. *See Lassiter*, 2007 WL 162682, at *3 (a Fourth Amendment malicious prosecution claim could not be sustained where there was no evidence that plaintiff "was ever taken into custody or restrained in any way in connection with the Superior Court criminal charges[]"). This finding is consistent with the view that a common law cause of action

for malicious prosecution "permits damages for confinement imposed pursuant to legal process." *Heck v. Humphrey*, 512 U.S. 477, 484 (1994).

### E. Equal Protection (Count 8)[11]

In her eighth cause of action, Plaintiff alleges as follows:

> The Defendants inflicted unequal treatment upon [her] for no reason other than malice, treating her radically differently than others similarly situated. Defendants targeted Plaintiff with false charges, prosecution, and citations, for political reasons, to prevent [her] from being able to successfully run for office, and as retaliation for constitutionally protected free speech, association, and participation in the political process, all of which are wholly unrelated to any legitimate state objective.

Co. (Doc. 1) at 38, ¶ 70. Basically, Defendants argue that this claim is not cognizable because: (1) Plaintiff has not sufficiently alleged differential treatment; and (2) the official acts of which Plaintiff is complaining are inherently discretionary, taking them outside the realm of a class-of-one equal protection claim. Both arguments are valid.

The Equal Protection Clause guarantees that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Supreme Court has "recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). "In order to bring a 'class of one' claim, plaintiffs must allege that the [defendants]: '(1) intentionally (2) treated [plaintiff[]] differently than other similarly situated [individuals], (3) without a rational basis.'" *Kolstad v. County of Amador*, 2013 WL 6065315, at *6 (E.D.Cal. Nov. 14, 2013) (quoting *Gerhart v. Lake County*, 637 F.3d 1013, 1022 (9th Cir. 2011)). "The degree of similarity between plaintiff and the persons with whom [s]he compares h[er]self must be extremely high." *Shapiro v. Willowbrook Home LLC*, 2014

---

[11] Counts 1-3 and 5-7 are alleged against all Defendants, and count 4 against the Town only. Count 8 does not specify, so presumably Plaintiff intended to allege this count against all Defendants as well.

WL 3706703, at *9 (C.D.Cal. June 23, 2014), *adopted by* 2014 WL 3716214 (C.D.Cal. July 23, 2014) (citing *Ruston v. Town Bd. for the Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010) ("[C]lass-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves.") (internal quotation marks and citation omitted); *Purze v. Village of Winthtrop Harbor*, 286 F.3d 452, 455 (7th Cir. 2002) (plaintiffs "must demonstrate that they were treated differently than someone who is *prima facie* identical in all relevant respects")).

In the present case, the complaint contains only the conclusory allegation, unsupported by any facts, that Defendants treated Plaintiff "differently than others similarly situated" and they did so "unrelated to any legitimate state objective." Co. (Doc. 1) at 38, ¶ 70. This is precisely the sort of "formulaic recitation of the elements of a cause of action" which *Twombly* prohibits. *See Twombly*, 550 U.S., at 555. "Without specific allegations showing that the . . . defendants treated Plaintiff differently from persons whose circumstances were similar to Plaintiff's in all relevant respects, there is no factual basis for h[er] equal protection claim." *See Shapiro*, 2014 WL 3706703, at *9 (citing *McDonald v. Village of Winnetka*, 371 F.3d 992, 1002 (7th Cir. 2004) (homeowner failed to establish class-of-one equal protection claim when he failed to identify anyone similarly situated to him who was intentionally treated differently in connection with investigation of fire); *Buchanan v. Maine*, 469 F.3d 158, 178 (1st Cir. 2006) ("Plaintiffs claiming an equal protection violation must first identify and relate specific instances where persons *situated similarly in all relevant aspects* were treated differently.") (internal quotation marks and citation omitted); *Vinatieri v. Mosley*, 787 F.Supp.2d 1022, 1031 (N.D.Cal. 2011) (plaintiff challenging police failure to arrest neighbor who assaulted him failed to state an equal protection claim when he failed to explain "to *whom* he was similarly situated"), *aff'd*, [532 Fed.Appx. 762] (9th Cir. . . . 2013)).

In her response, Plaintiff states that "there are roughly three other businesses that are comparable to hers and another business very similarly situated that were treated very differently[.]" Resp. (Doc. 25) at 16:9-12. This does not salvage Plaintiff's Equal

Protection claim. In the first place, obviously, the complaint does not include these belated allegations. Second, even if it did, without any detailed facts to support such a broad assertion, Plaintiff's class-of-one equal protection claim would fail. Nor does the equally broad and unsupported assertion in Plaintiff's response that there are "hundreds of thousands of travel trailers. . . parked in [the Town] during the winter season[]" do anything to substantiate the conclusory allegations in her complaint that Plaintiff was treated differently than other similarly situated individuals. (*See id*. at 16:19-20).

Plaintiff's equal protection claim is not viable for another reason. Courts have held that "[t]he class-of one doctrine does not apply to forms of state action that 'by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments.'" *Towery v. Brewer*, 672 F.3d 650, 660 (9th Cir. 2012) (quoting *Enquist v. Or. Dep't of Agric*., 553 U.S. 591, 603 (2008)). In those situations, the Supreme Court has recognized that "treating like individuals differently is an accepted consequence of the discretion granted." *Enquist*, 553 U.S. at 603. "Class of one claims are improper in such situations, according to the Court, because 'allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise.'" *Kolstad*, 2013 WL 6065315, at *6 (quoting *Enquist*, 553 U.S., at 603). "[C]ourts have extended [*Enquist*'s] rationale to other contexts in which a plaintiff is challenging a discretionary state action under a 'class of one' theory." *Id*. at *7 (*see, e.g*., *Flowers v. City of Minneapolis*, 558 F.3d 794, 799–800 (8th Cir. 2009) (concluding that "a police officer's decisions regarding whom to investigate and how to investigate are matters that necessarily involve discretion," and thus "they may not be attacked in a class-of-one equal protection claim")). "Other courts have applied *Enquist* to the enforcement of land use regulations." *Long v. County of Fresno*, 2014 WL 3689694, at *6 (E.D.Cal. July 24, 2014) (citing *Contasti v. City of Solana Beach*, 2014 WL 60005, *7 (S.D.Cal. Jan.6, 2014) (concluding "that the City Council's decision to deny Plaintiff's development review permit by its nature 'involve[d] discretionary decision making based on ...

subjective, individualized assessments,' and therefore, cannot constitute an equal protection violation) (citations omitted); (*Novotny v. Tripp County, S.D.*, 664 F.3d 1173, 1179 (8th Cir. 2011) (holding that the enforcement of a weed abatement ordinance was discretionary and "not the result of arbitrary government classification," and thus not subject to a class of one challenge); *Papas v. Leonard*, . . . , 2012 WL 1445853, at *17 (D.Or. Apr.25, 2012) (finding the plaintiffs' challenge to discretionary code enforcement decisions did not state cognizable class of one claim)).

Based upon this persuasive authority, the Court finds that Plaintiff has failed to state a cognizable equal protection claim. *Cf. Donahoe*, 869 F.Supp.2d at 1074 (where Plaintiffs' equal protection claims arose "mainly from allegedly unlawful decisions by Defendants in the investigation and prosecution of criminal charges and institution of civil proceedings against Plaintiffs[]" no class of one equal protection claim stated because those decisions were "all discretionary[]").

### E. Conspiracy to Violate Civil Rights (Count 6)

The complaint's sixth cause of action alleges a conspiracy by all Defendants to violate Plaintiff's constitutionally protected rights. Co. (Doc. 1) at 37, ¶¶ 65-66. Once again, Defendants contend that the lack of supporting factual allegations in the complaint is fatal. In particular, the complaint does not allege any facts showing an agreement between Defendants. Also missing are any allegations "that the zoning citations were effected pursuant to such an agreement." Mot. (Doc. 17) at 11:13-14. Without explanation, Plaintiff counters that she has alleged sufficient facts to support such a claim. Even a quick perusal of the complaint belies this bald assertion and demonstrates, as Defendants retort, the lack of sufficient specific factual allegations to support a section 1983 conspiracy claim.

"To plead a claim of conspiracy under § 1983, plaintiff must allege facts with sufficient particularity to show an agreement or a meeting of the minds to violate the plaintiff's constitutional rights." *Davis v. Powell*, 901 F.Supp.2d 1196, 1217 (S.D.Cal. 2012) (citing *Miller v. California*, 355 F.3d 1172, 1177 n. 3 (9th Cir. 2004); *Margolis v.*

*Ryan*, 140 F.3d 850, 853 (9th Cir. 1998); *Woodrum v. Woodward County*, 866 F.2d 1121, 1126 (9th Cir. 1989)). "The Ninth Circuit has held that vague and conclusory allegations of conspiracy (i.e., bare allegations that a defendant 'conspired' with another) are insufficient to state a claim." *Gottschalk v. Litt*, 2009 WL 1704991, at *3 (C.D.Cal. June 15, 2009) (citing, *inter alia*, *Buckey v. County of Los Angeles*, 968 F.2d 791, 794 (9th Cir. 1992); *see also Simmons v. Sacramento County Sup.Ct.*, 318 F.3d 1156, 1161 (9th Cir. 2003) (conclusory allegations of conspiracy to deprive plaintiff of due process insufficient to state a claim)). "Rather, '[t]o state a claim for a conspiracy to violate one's constitutional rights under section 1983, the plaintiff must state specific facts to support the existence of the claimed conspiracy.'" *Id.* (quoting *Burns v. County of King*, 883 F.2d 819, 821 (9th Cir. 1989)). "Claims that fail to specify each defendant's role in the alleged conspiracy are subject to dismissal." *Id.* (citing *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992)).

Simply put, Plaintiff's complaint lacks the requisite specificity to allege a section 1983 conspiracy. Plaintiff alleges that "[a]s part of a clear pattern of intentional targeting and conspiracy[,] . . . Defendants" pursued the zoning code complaint against her. Co. (Doc. 1) at 9, ¶ 16. Plaintiff further alleges that "Town Management approved of the actions taken against [her]," and "conspired in the bringing of false charges against [her][.]" (*Id.* at 12, ¶ 25). The foregoing are part of the specifically designated "factual allegations" in the complaint. (*Id.* at 8:22 (emphasis omitted)). In her sixth cause of action, relying upon the "facts['] section of the complaint," Plaintiff alleges "a conscious conspiracy among the Defendants to stifle, chill, and violate [her] rights, privileges and immunities guaranteed by the First, Fourth and Fourteenth Amendments to the United States Constitution." (*Id.* at 37, ¶ 66). Plaintiff also alleges that "[t]here is a very well documented, overwhelmingly supported, clear pattern of intentional, coordinated conspiracy[.]" (*Id.*) Although this sentence does not mention Defendants, that is a reasonable inference based upon the paragraph as a whole.

The foregoing allegations, lacking as they do, any factual details, clearly are

insufficient to state a section 1983 conspiracy claim. The complaint is void of any facts showing an agreement or meeting of the minds among Defendants to violate Plaintiff's constitutional rights. Similarly, the complaint is void of any facts specifying each, or any, of Defendants' roles in the claimed conspiracy. The complaint merely refers to "Defendants," without distinguishing among them, much less their individual roles in the alleged conspiracy. Equally vague and unhelpful is the allegation that "Town Management" conspired against Plaintiff. *See* Co. (Doc. 1) at 12, ¶ 25.

Moreover, the allegations that defendant Henrichs served the zoning code complaint on Plaintiff and that defendant Bruno authored a memorandum to the Town Council regarding zoning violations, do not allege, nor can a reasonable inference be drawn therefrom, that there was an agreement among Defendants to violate her constitutional rights. In the words of the *Iqbal* Court, Plaintiff has failed to state a section 1983 conspiracy claim because her complaint "does not contain any factual allegations sufficient to plausibly suggest[]" that any of the Defendants conspired to violate her constitutional rights. *See Iqbal*, 556 U.S., at 683. This claim fails for the additional reason, as already explained, that Plaintiff "has not shown any 'actual deprivation of h[er] constitutional rights resulted from the alleged conspiracy.'" *Harts v. Parks*, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting *Woodrum v. Woodward County*, 866 F.2d 1121, 1126 (9th Cir. 1989) (citations omitted)); *see also Shapiro*, 2014 WL 3706703, at *10 (citing cases) ("Because Plaintiff fails to state an underlying constitutional claim, his allegations are insufficient to state a claim for conspiracy.")

To conclude insofar as defendants Bruno and Henrichs are concerned, the Court grants their motion for judgment on the pleadings with respect to counts 1-3, 6 and 8.

**E. Municipal Liability – (Counts 1-4, 6 and 8)**

Plaintiff alleges that the Town, along with the individual defendants, is liable for violating her constitutional rights and for conspiring to violate those rights. Plaintiff's fourth cause of action is against the Town only, alleging "failure to train, enact and implement policies to prevent abuse, supervise and discipline[.]" Co. (Doc. 1) at 34:26-27 (emphasis omitted).

Plaintiff has failed to state a claim against the Town as to any of the section 1983 based claims, however, because she has not sufficiently alleged any constitutional violations against any of the individual Defendants, as discussed herein.  *See Yousefian*, 2015 WL 925594, at *4 ("Because no constitutional violation occurred, there can be no *Monell* liability on the part of the City[.]"); *see also City of L.A. v. Heller*, 475 U.S. 796, 799 (1986) (per curiam); *Jackson v. City of Bremerton*, 268 F.3d 646, 653-54 (9th Cir. 2001) ("Neither a municipality nor a supervisor . . . can be held liable under §  1983 where no injury or constitutional violation occurred."); *Scott v. Henrich*, 39 F.3d 912, 916 (9th Cir. 1994) ("While the liability of municipalities doesn't turn on the liability of individual officers, it is contingent on a violation of constitutional rights.")  Thus, the Court grants the Town's motion for judgment on the pleadings with respect to Counts 1-4, 6 and 8.

**IV.  State Law Tort Claims**

Although the Court has found that Plaintiff did not sufficiently allege any section 1983 claims against Defendants, it will consider the legal sufficiency of the two state law tort claims against them.[12]  In that regard, the Court recognizes that Arizona's notice of claim statute, A.R.S. § 12-821.01, applies to Plaintiff's tort claims, although it did not apply to her section 1983 claims.  As previously alluded to, by arguing for the first time in their reply that "the *entirety* of this action is barred by the statute of limitations[,]"Defendants have waived this argument.  *See* Reply (Doc. 27) at 6:3 (emphasis added).  Hence the Court will consider the sufficiency of the tort claims against defendants Bruno, Henrichs, Orgeron, Anderson and the Town.

**A.  Intentional Infliction of Emotional Distress (Count 5)**

In her fifth cause of action, with no mention whatsoever of Defendants, either as a group, or individually, Plaintiff alleges that she was the "target[] of[,]" among other

---

[12]     Having found that Plaintiff has not sufficiently alleged any federal law claims, the Court could decline to exercise supplemental jurisdiction over her pendent state law tort claims.  28 U.S.C. § 1367(c) (district court may decline to exercise supplemental jurisdiction where it has "dismissed all claims over which it has original jurisdiction[]").  In the exercise of this discretion, the Court will address these claims, however.

things, "intentional infliction of emotional distress." Co. (Doc. 1) at 36, ¶ 64. The complaint also alleges that the was "caus[ed] emotional distress[,]" but again, no Defendant is mentioned, and no factual details are provided. In a by now familiar refrain, Defendants argue that the complaint does not sufficiently allege the elements of an IIED claim. Plaintiff disagrees.

Under Arizona law, the tort of IIED requires proof of three elements: "'[F]irst, the conduct by the defendant must be 'extreme' and 'outrageous'; second, the defendant must either intend to cause emotional distress or recklessly disregard the near certainty that such distress will result from his conduct; and third, severe emotional distress must indeed occur as a result of defendant's conduct.'" *Demetrulias v. Wal-Mart Stores Inc.*, 917 F.Supp.2d 993, 1012 (D.Ariz. 2013) (quoting *Ford v. Revlon, Inc.*, 153 Ariz. 38, 43, 734 P.2d 580, 585 (1987) (citing Restatement (Second) of Torts § 46(1) (1965)). "The adjectives 'extreme' and 'outrageous' are not just for show; evidence of callousness or insensitivity will not suffice." *Id.* (quoting *Mintz v. Bell Atl. Sys. Leasing Int'l, Inc.*, 183 Ariz. 550, 555 (Ct.App.1995)). "The question of whether the acts complained of by a plaintiff are sufficiently extreme or outrageous is answered by the court." *Demetrulias*, 917 F.Supp.2d at 1012 *Id.* (citation omitted); *see also Patton v. First Fed. Sav. & Loan Ass'n of Phoenix*, 118 Ariz. 473, 476 (1978) (citation omitted) ("It is the duty of the court as society's conscience to determine whether the acts complained of can be considered sufficiently extreme and outrageous to state a claim for relief.")

As to the first, "[t]he 'conduct necessary to sustain an intentional infliction claim falls at the *very extreme edge* of the spectrum of possible conduct.'" *Matson v. Safeway*, 2013 WL 6628257, at *4 (D.Ariz. Dec. 17, 2013) (quoting *Watts v. Golden Age Nursing Home*, 127 Ariz. 255, 258 (1980)) (emphasis added). To satisfy this element, "[t]he plaintiff must show that the defendant's acts were 'so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.'" *Demetrulias*, 917 F.Supp.2d at 1012 (quoting *Mintz*, 183 Ariz. at 554). Importantly, "[i]t is not enough 'that the

[Defendants have] acted with an intent which is tortious or even criminal, or that [they have] intended to inflict emotional distress, or even that [their] conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.'" *Allen v. Quest Online, LLC*, 2011 WL 4403674, at *10 (D.Ariz. Sept. 22, 2011) (quoting Restatement (Second) of Torts § 46, cmt. d (1965)). Likewise, "even a defendant's 'unjustifiable' conduct does not necessarily rise to the level of 'atrocious' and 'beyond all possible bounds of decency' that would cause an average member of the community to believe it was 'outrageous.'" *Matson*, 2013 WL 6628257 at *4 (quoting *Nelson v. Phoenix Resort Corp.*, 181 Ariz. 188, 199 (App.1994)).

Regardless of which Defendant the Court is considering, the complaint is wholly bereft of any allegations that the conduct of any of them "falls at the very extreme edge of the spectrum of possible conduct." *See Matson*, 2013 WL 6628257, at *4. Vague allegations of participating in or directing the filing of the zoning code complaint cannot be said to be "so extreme in degree, as to go beyond all possible bounds of decency." *See Demetrulias*, 917 F.Supp.2d at 1012 (internal quotation marks and citation omitted). The same can be said of defendant Bruno's authoring of the code compliance memorandum to the Town Council, and defendant Henrich's service of the stop work order and the summons for the zoning code complaint.

Insofar as the second IIED element is concerned, there are no allegations at all in the complaint that any Defendant intended to cause Plaintiff emotional distress. There also are no allegations that any Defendant acted with "reckless[] disregard" such that there was a "near certainty that . . . distress would result from [their] conduct." *See Demetrulias*, 917 F.Supp.2d at 1012 (quotation marks and citation omitted).

As to the third element, *i.e.* the occurrence of severe emotional distress, the Court will begin its analysis by looking to *Jones I*. The Court does so because Plaintiff's IIED claims in the two cases are virtually identical,[13] as are her responses.[14]

---

[13]    *Compare* Co. (Doc. 1) 2:12-cv-1383 at ¶ 81 *with* Co. (Doc. 1) 2:13-02170 at ¶ 64.

This complaint, as in *Jones I*, "is devoid of any factual allegations asserting that Plaintiff actually suffered emotional distress, let alone 'severe' emotional distress." *See Jones I*, 2014 WL 4771851, at *14 (citation omitted). "Indeed, the only specific mention of 'emotional distress' occurs in a single paragraph devoted to a summary of the intentional infliction of emotional distress claim." *Id.* (citing (Doc. 1 ¶ 81[15]) (footnote added). "That sentence, however, is nothing more than a conclusory allegation that Defendants intended to violate Plaintiff's various constitutional rights by causing her emotional distress." *Id.* (internal quotation marks and citation omitted).

And, just like *Jones I*, Plaintiff's admits that "the Complaint does not go into great detail about the nature of [her] emotional distress[.]" Resp. (Doc. 25) at 12:17-18; *see also Jones I*, 2014 WL 4771851, at *14 (same). Although she acknowledges that the complaint does "not expressly describe[]" her emotional distress "in detail," Plaintiff retorts that "it is a clear and reasonable inference arising from the allegations in the Complaint related to the emotional harm inflicted upon her[.]" (*Id.* at 12:25-28). However, because the complaint does not include sufficient factual content, the Court is unable to draw the reasonable inference that severe emotional distress did indeed occur as a result of Defendants' conduct. The Court therefore grants Defendants' motion for judgment on the pleadings as to count 6 of the complaint.

## B. Intentional Interference with Contract (Count 7)

The complaint alleges that all Defendants "interfere[d] with, and frustrate[d] *the* contract entered into between [her] and [Mr.] Oldham," Desert Gardens' owner, "to prevent Plaintiff from being able to ply her trade and to ruin her business in an attempt to induce her to leave town." Co. (Doc. 1) at 38, ¶ 68 (emphasis added). This count does

---

[14]     *Compare* Pl.'s Resp. (Doc. 31) 2:12-cv-1383 at 2-4 *with* Pl.'s Resp. (Doc. 25) at 9-13. As with many of the other arguments in her response, Plaintiff borrowed heavily form the response prepared by her then attorney in *Jones I*. This is problematic because she did not take into account, among other things, the obvious factual distinctions between the two cases.

[15]     Paragraph 64 of Plaintiff's complaint substantially mirrors paragraph 81 of the *Jones I* complaint.

identify "the contract" which is the subject of Plaintiff's IIC claim, although is refers back to the "facts section" of the complaint. (*Id.*) That section includes allegations as to a "verbal agreement" between Plaintiff and Mr. Oldham for the "renovat[ion]" of a "Holiday Rambler Travel Trailer with a full length slide out into a grooming shop." (*Id.* at 9, ¶ 17). "Plaintiff gave Desert Gardens substantial 'good faith' money to cover the cost of supplies and labor." (*Id.*) "Upon 'turnkey' completion of the work, Plaintiff was to occupy a space at Main St. Swap Meet, also owned by Oldham." (*Id.*) "This was to be a permanent, not seasonal or temporary location." (*Id.*)

Defendants contend that Plaintiff has not sufficiently alleged any of the elements of an IIC claim. Most basically, "Plaintiff has not alleged that her verbal agreement was a valid contractual relationship with Desert Gardens or its owner[.]" Mot. (Doc. 17) at 12:2-3. Focusing on the purported "tenant" and "property owner" . . . "relationship[]" between she and Mr. Oldham, in her response Plaintiff states that Defendants were aware of that contractual relationship and "actually disrupted[]" it by "acting improperly." Resp. (Doc. 25) at 14:21 (internal quotation marks omitted); at 14:26-27. Notably, the complaint lacks any such specific allegations substantiating these statements.

"The tort of [IIC] requires a plaintiff to prove: '(1) existence of a valid contractual relationship, (2) knowledge of the relationship on the part of the interferor, (3) intentional interference inducing or causing a breach, (4) resultant damage to the party whose relationship has been disrupted, and (5) that the defendant acted improperly.'" *Tresóna Multimedia LLC v. Legg*, 2015 WL 470228, at *9 (D.Ariz. Feb. 4, 2014) (quoting *Safeway Ins. Co. v. Guerrero*, 106 P.3d 1020, 1025 (Ariz. 2005)). "Essential to the right of recovery is the existence of a contractual relationship between the plaintiff and a party other than the defendant." *Am. Family Mut. Ins. Co. v. Zavala*, 302 F.Supp.2d 1108, 1118 (D. Ariz. 2003) (citation omitted).

Defendants seem to be interpreting the complaint as alleged two verbal agreements -- one for a "lease" and another "for the sale of goods valued at over $500[.]" Mot. (Doc. 17) at 12:5-6. Given this interpretation, and relying upon Arizona's statute of

frauds, A.R.S. § 44-101, Defendants contend that the complaint does not allege the existence of a valid contractual relationship, which is essential to recovery for IIC. That statute requires, among other things, that a contract for the sale of goods valued at five hundred dollars or more must be in writing to be enforceable. A.R.S. § 44-101(4). That statute similarly requires that "an agreement for leasing for a longer period than one year[]" also must be in writing to be enforceable. A.R.S. § 44-101(6).

In making this argument, Defendants are assuming that the verbal agreement for renovations was a contract for the sale of goods, governed by the statute of frauds. Given the allegations that Plaintiff paid Desert Gardens for "supplies and labor[,]" at this stage, [16] the contract will be deemed one for services to which the statute of frauds does not apply. *See Double AA Builders, Ltd. v. Grand State Const. L.L.C.*, 210 Ariz. 503, 509-511 (App. 2005) (statute of frauds did not apply to subcontractor hired to install exterior insulation on commercial building project, including the provision of labor and materials). Therefore, at this point, Defendants cannot rely upon the statute of frauds to negate the existence of a contractual relationship between Plaintiff and Mr. Oldham.

That does not mean, however, that Plaintiff can survive Defendants' motion for judgment on the pleadings as to her IIC claim. With respect to the "renovation agreement," as Defendants stress, there are no allegations in the complaint that any of them had knowledge of that agreement, much less that they acted improperly with respect thereto. Without such allegations, Plaintiff has failed to state a IIC claim insofar as this particular verbal renovation agreement is concerned.

With respect to the "lease[,]"there are simply insufficient allegations to establish the existence of such an agreement. The mere allegation that Plaintiff "was to occupy a space at [the] Main St. Swap Meet[,]" even if "permanent," does not supply sufficient

---

[16] The Court is keenly aware that the determination of whether "the predominant purpose of the contemplated contract is often a question of fact[,]"and that the statute of frauds is an affirmative defense. *Double AA Builders*, 210 Ariz. at 842 (citation omitted). At this early stage in the proceedings, with no development of the factual record, and looking solely at the allegations in the complaint, the Court cannot find that the statute of frauds negates the existence of a valid contract for the trailer renovations however.

indicia of a lease.  *See* Co. (Doc. 1) at 9, ¶ 17.  Moreover, this time the Court does agree with Defendants.  Assuming *arguendo* that the complaint alleges the existence of a valid lease, compliance with the statute of frauds would be necessary.  That is because, as alleged, the "lease" was "permanent," *i.e.* for a period of longer than a year.  (*Id.*)  Thus, that lease agreement would have to have been in writing, but it was not.  *See* A.R.S. § 44-101.  As a result, Plaintiff's IIC claim based upon a "lease" between she and Mr. Oldham fails for want of a valid contract.  Thus, the Court grants Defendants' motion for judgment on the pleadings as to count 7 of the complaint.

In her conclusion, Plaintiff requests that "in the interest of justice[]" she be allowed to amend her complaint "if the deficiency may be remedied[.]"  Resp. (Doc. 25) at 18:18-20.  As the foregoing discussion shows, granting Plaintiff leave to amend would be futile because none of the conduct which the complaint alleges, "even taken in the light most favorable to [her], amounts to a constitutional violation."  *See Williams v. California*, 764 F.3d 1002, 1008-1009 (9th Cir. 2014).  The same is true of Plaintiff's state law tort claims.  In this regard, none of the extraneous allegations in Plaintiff's response, could possibly cure the complaint's deficiencies.  *See*  Reply (Doc. 27) at 3, n. 4.  Thus, because the deficiencies in her complaint cannot be remedied, amendment will not be allowed.

Plaintiff's complaint, as can be seen, is marked by "thread-bare recitals of the elements of [her alleged] causes of action, supported by mere conclusory statements[.]"  *See Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S., at 555).  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Iqbal*, 556 U.S. at 679.  The necessary factual allegations are wholly missing from Plaintiff's complaint.

. . . .

. . . .

. . . .

. . . .

Accordingly,

**IT IS HEREBY ORDERED GRANTING** Defendants' Motion for Judgment on the Pleadings (Doc. 17), and dismissing this action with prejudice.

**IT IS FURTHER ORDERED** directing the Clerk of the Court to terminate this action and enter judgment in favor of Defendants and against Plaintiff.

Dated this 30th day of March, 2015.

_____
Honorable Diane J. Humetewa
United States District Judge